Burton. 5-016-0019. Whitney, whenever you're ready. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, counsel Richard Whitney for defendant appellant Aaron Burton. Although we raise three issues in this appeal, I don't believe that this court will need to reach the second and third issues regarding ineffective assistance of trial counsel or the trial court's improper reliance on the mere fact of Mr. Burton's lack of employment when sentencing him. We submit and rely primarily on the first issue that it is abundantly clear in this case that the state's evidence was insufficient to convict Mr. Burton of the where its own occurrence witnesses testified that the victim apparently stole the heroin that caused her death. The state relied on that very evidence to obtain a conviction, but unfortunately both Mr. Burton's attorney and the jury managed to overlook the fact that delivering heroin to someone. If I were to walk into an art museum and steal a Rembrandt, I probably would not get very far asserting as an affirmative defense that that's the same thing as the museum delivering it to me. We submit that the same principle should apply when the shoe is on the other foot, and the state tries to get by with conflating these two pretty distinct methods of transferring property. In this case, the state had no evidence that Mr. Burton of his own volition delivered to the victim, Lacey Kimple, the heroin that she injected into her body on June 13, 2011. In fact, its own evidence from its chief witnesses and Mr. Burton's recorded statement was that while Mr. Burton and Kimple snorted heroin together that weekend, Mr. Burton disapproved of Kimple injecting heroin into her body, but that she was an inveterate drug seeker in the habit of stealing drugs from him and injecting heroin in private behind his back and without his permission. Both of the state's sole occurrence witnesses, Holly Stewart and Josh Ellis, testified that upon waking up on the afternoon of June 13, they heard Mr. Burton angrily complain that Kimple had, quote unquote, stole his shit, pardon my language, that's the quote, which Stewart understood was referring to his heroin or that she took my shit. She also took his car, drove it to a HUCS gas station, went into the woman's restroom, and consistent with her habit of injecting the heroin in private, proceeded to inject the apparently fatal dose into her system. Even her conduct of taking the heroin out of the house and resorting to shooting it up in a public restroom is consistent with the evidence that she stole the fatal heroin, since a person who stole it would typically not want to be hanging around the scene of the theft. This was a huge problem for the state because to convince someone of drug-induced homicides, it had to prove that Mr. Burton unlawfully delivered a controlled substance to another, and that person's death was caused by the injection of any amount of that controlled substance. Yet again, some witnesses' testimony made it highly probable that the controlled substance here causing her death was the so-called shit that was stolen from her. So in its closing argument, the state tried to gloss over the inherent contradiction between its contention that Mr. Burton delivered the fatal dose of heroin and its own witnesses' testimony that Kimple stole it by stating that Kimple, and I quote, took half the shit from the defendant that he had delivered to her previously, unquote. Now, I don't know where the state got the half part. There's no evidence about that, but the important point here is that the state didn't resolve the contradiction. It just got by with a blatantly self-contradictory statement. If Mr. Burton had previously delivered the heroin to Kimple, and there is zero evidence of this, Kimple could not have taken it from him. You can't take something from someone if you already have it. Conversely, if she took it from him, he still had possession of it until the moment that she took it, and therefore he did not deliver it to her. Both propositions cannot be true. The state's own evidence proved that the latter proposition was true. Therefore, the former one was false. Mr. Burton did not deliver that heroin to Kimple. Yet, unfortunately, the state's self-contradictory argument worked with this particular jury. It is appalling. Was the heroin, the fatal dose of the heroin, that came from the same heroin that they were sharing the night before, or is this a completely different stash of heroin? Well, we don't know that. The state's argument would be it was by implication. It argued in closing argument that she didn't have any other source of heroin, but there was no evidence of that. One would have to draw inferences that that was the most you know, there's no way to prove a negative. She might have had another source. The only thing that really links the two is that one of the state's witnesses said he saw some of the heroin in a baggie, and a baggie was found near her body. That's really about the only thing linking it for certain. But in any event, given this other evidence, that the state relied on that she stole that heroin, it is appalling that neither defense counsel nor the jury noticed the glaring deficiency in the state's case, but that's what the record shows, and we can all see that now. It's not often that the jury gets something this clearly wrong, but it happened here. But to that point, Mr. Whitney, each side had their theory of the case. The defense went under, she stole it. Okay, that's their theory of the case. The state's attorney's theory is he delivered it. They both were able to present their case. It went to the jury, and wouldn't that be a question of fact that the jury would decide, and they rendered their verdict, correct? It would not, your honor, because in fact, at the trial level, defense counsel did not advance this argument, and this is one of the bases for our ineffective assistance of counsel arguments, is the defense counsel trial attorney Quinn never once called attention to this fact. That was not his argument. The defense argument with the trial was they brought in another expert to say that basically she might have died from the other things in her system, the alprazolam and the other drugs that she had in her body, which was a plausible defense. There was, she did have other substances in her body, but it never once called attention or argued to the jury that, hey, wait a second, this is not a delivery. Their own witnesses said they stole it. Nor did counsel tender as a jury instruction, instruction 17.05a, the definition of deliver, which if counsel had done that, counsel could have then called attention to the fact that, well, sure, both deliver and theft involve a transfer of possession, but it was Mr. Burton who was accused of delivering, and if it was stolen, he was not the one transferring possession. She transferred possession behind his back without his knowledge. That's what the state's evidence pointed out. So that does get us into the other problem in this case, the ineffective assistance of counsel. He really didn't raise this argument, and that's really the problem here. And again, given that that's the only way that the state attempted to only two occurrence witnesses that she had stolen it, this creates this problem here with the evidence. Fortunately, we have appellate courts to correct these kinds of errors, and we're here asking you to take a stand in support of the presumably non-controversial legal proposition that a theft is not a delivery. There's nothing that the state has argued in its brief that denies that proposition or substantively addresses the argument. In fact, on appeal, the state now takes a position diametrically opposed to the position adopted at trial and argues that the jury must have disregarded its own witnesses' testimony. But even that does not answer the argument, because if we disregard the state's witness testimony, there is now even less evidence supporting its case. These reasons, we respectfully ask that in this particular case, that this court vacate the conviction and enter a judgment of acquittal. Thank you. Thank you. Your Honors, counsel, may it please the Court, Kelly Stacey appearing on behalf of the state. I'd like to start with a correction. Defendant pointed out in the reply brief that at page 29 of the state's brief where the Polk, People v. Polk, P-O-L-K, case was discussed, there's an incorrect word used. The state inadvertently used the word verdict rather than instructions. So the case actually states under People v. Polk, a reviewing court will not ordinarily reverse a circuit court even if the circuit court gave faulty instructions unless the instructions clearly misled the jury and resulted in prejudice to the defendant. That was an inadvertent use of that word. The state regressed that misquote and did not in any way intend to mislead the court. From there, now moving on to the issues, in this drug-induced homicide case, defendant basically argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt, especially where he reported to his friends and the police, Lacey stole my heroin. So on appeal, the defendant does not get a retrial, which sounds like what he's asking for today. Instead, a reviewing court must address whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. What you're having today is an argument that all of those inferences should favor the defense, that is not the law, and that's certainly not what happened in this case. It is at issue whether a delivery occurred in this case and whether or not it was true that Lacey stole the heroin or stole defendant's shit, as he told the police and both Holly and Josh. The problem for the defendant is the jury was aware of this allegation. The jury did not disregard the evidence. It is the jury seated as the finder of fact who determines whether or not a witness is credible and whether or not certain things affect the testimony of the witnesses. We heard that Joshua and Holly were both using alcohol and Xanax during this trip to Chicago. Those are things that can impact on the credibility of a witness, can impact on memories and on the ability to recall details. The jury had all of that information, that this was a group going up to Chicago. Apparently a lot of partying went on. Some of the memories are a little bit, were a little bit blurry. But the jury had all the information it needed to make the credibility determination. The jury didn't seem to have any trouble making that credibility determination. As to the claim of ineffective assistance of counsel, defendant now faults his attorney for not focusing enough that Lacey stole the heroin, even though from opening statement all through, that was what the argument was, that he can't have delivered it if Lacey actually stole the on what delivering means. I took a moment to look at people versus coups. It's a case the state cited in its brief. It's a 2012 second district case. And it is a drug-induced homicide case by unlawfully delivering a controlled substance to another where that person's death is caused by ingesting that controlled substance. Now delivering in that case was described as the actual constructive or attempted transfer of possession of controlled substance with or without consideration whether or not there was an agency relationship. Now I used to be a defense attorney and I could not want anything that might potentially confuse a juror to come out and that statement to me sounds very confusing. And if the issue of delivery appears on its face to be one of an actual transfer of possession, there's no need to give that further instruction and defendant doesn't come in here today and say how that could have helped his case. He says it would have helped his case but he doesn't show how it would have helped. My opinion is it's a matter of trial strategy not to issue that second instruction concerning what delivery is because it sounds a lot more confusing than just an actual transfer. And certainly under the law, if someone stole the heroin, it cannot be a transfer that was made by that person's free will. So it would negate the entire liability on the part of the defendant. The jury certainly did not believe that was the case. The defendant also complains the state made the argument to the jury that defendant was Lacey's only heroin connection. And I think in response to that, because this did come up in the trial court level at the motion for a new trial, Mr. Quinn came in and was able to testify about that he and the defendant sat down and met on the case, they discussed trial strategy and they had an agreement on trial strategy. So there's many different ways this could be defended. But a prosecutor is granted wide latitude and the trial court here believes that that statement, that her connection to heroin was the defendant, was supported by the evidence in the case. Certainly there was no evidence that anyone else provided heroin. Finally, the defendant contends his sentence should be vacated and remanded because he believes the court improperly considered the fact that he was unemployed. Apart from the fact that trial court has broad discretion in imposing a sentence, a reviewing court does not re-weigh those factors considered by the court. Here it is clear that any of the discussion about the defendant's unemployment had to do with drugs have been a major impact in this defendant's life from the get-go. But the issue is the trial court does not have to accept a person's drug use as a mitigating factor and let that factor into a local sentence in this case. In this case, the court entered a rather considered judgment on the sentence. There was testimony that within a period of six years, this was the second person whose death was attributable to the defendant. He got 17 years, which is right in the mid-range of six to 30 that he was subject to. The prior guilty plea on the involuntary manslaughter, that verdict, again, that was a guilty plea, that came in sentencing. The court noted that this defendant had a violent history. And no one is here arguing that Aaron Burton went into that house bathroom and took that syringe and jammed it into Lacey's arm and injected it. But the point of the whole case is, he might as well have, because without his providing the heroin, she would not be dead on that bathroom floor. It is also the reason why in these cases there needs to be great deterrence, because every one of these cases ends in the same way. You end up with these demonstrative phone board evidence of a 25-year-old woman sitting slumped over against the bathroom in the hucks with all of her worldly possessions in front of her, something to heat the heroin up with, something to inject it. And society, frankly, needs to put a stop to this. We can't have this coming in and ruining our young people. That's what we have here. I see nothing wrong with what the judge did in this case. I see he tried to argue, look, this was Lacey stealing it. But the evidence wasn't really on his side. All of the evidence showed they were going to Chicago to get this heroin. The evidence also showed there was heroin still left. And the defendant even admitted he used heroin that morning, that Monday morning, the same day that Lacey was found. So with all due respect to the defense counsel's arguments, the state believes it met its burden on this case and that it should be affirmed in all respects. Thank you, Your Honors. Thank you. Thank you, Your Honors. First of all, Your Honors, we're not here asking for a retrial. We cited the correct standard of review, the very one that opposing counsel quoted in making our argument in our opening brief. I'm not sure how opposing counsel managed to jury room while it was deliberating. But in fact, we don't know what the jury was thinking. We never know what the jury was thinking. To posit that the jury chose not to believe the state's witnesses, I suppose, is a possibility. But we don't know that. And there's no way of demonstrating that. But that points to an even larger problem for the state's argument. If the jury, in fact, chose not to believe the state's own witnesses, where does that leave the state's argument? It leaves it nowhere. All we have, then, is that you're left with Mr. Burton and Kimple snorting heroin together on the weekend. It does not follow from this that he must have knowingly delivered some heroin to her and that this was the heroin she injected behind his back and against his express wishes on Monday afternoon. No rational jury could have so found that the state proved all of this beyond a reasonable doubt. And that was the test that the state had to satisfy. Again, the way it got by with it, it was the state's own argument that you need to believe Holly Stewart and Joshua Ellis when they say that Kimple stole half the shit, but it glossed over the contradiction by saying, well, that he previously delivered to her, even though that this particular jury swallowed that argument, which is why it was not a rational verdict. With respect to the argument regarding ineffective assistance of counsel, the Coots case decided to determine that defense counsel was ineffective for failing to propose a jury instruction on the delivery. So the case cited by the state in that regard doesn't exactly support the argument made there that this would have confused the jury more. Not only that, in the state's own brief, it concedes that under Supreme Court Rule 451A, where an applicable IPI instruction exists, it shall be used unless the court determines it does not accurately state the law. Well, it does accurately state the law in delivery. So the state has essentially conceded that point, that the instruction should have been given by counsel. And I did, I believe, already explain in my opening argument why that would have helped clarify it. It's not that the definition of delivery per se distinguishes between theft and other forms of property transfer, but it's the subject, right? In a delivery, the person charged has to be the one making the transfer of property. In a theft, it's the other person who is making the transfer of property. And, you know, clearly we should not be confused about the difference between delivery and theft at this stage of the game. As far as the statement of counsel in closing argument that the defendant was Temple's sole supplier of heroin, there's no facts in the record to support that he was the sole supplier. Nobody testified to that. You know, saying there was no evidence that she got it somewhere else is not the same thing as saying that there was no evidence that he was the only supplier. It logically does not follow from that. So that clearly was error. But again, we rely primarily on the fact that a delivery clearly cannot be a theft by another person where the victim was the one that stole it. No rational jury should convict. And accordingly, following that very standard that was set forth in the standard of review for reversing a jury, we believe that standard has been met in this case. And we respectfully ask this court to reverse the judgment of conviction on the ground that the state failed to prove every element of the charge against him beyond a reasonable doubt and enter a judgment of taking that into consideration and issue an order in due course.